Vincent GOKA, Plaintiff–Appellant,

v.

Paul BOBBITT, Officer, Acting Sergeant, et al., Defendants–Appellees.

No. 87–1981.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1988.

Decided Nov. 21, 1988.

Rehearing Denied Dec. 21, 1988.

Lawrence C. Marshall, Asst. Prof. of Law, Northwestern Univ. Law School, Chicago, Ill., for plaintiff-appellant.

Karen Michaels Caille, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Vincent Goka, a former inmate at the Stateville Correctional Center, brought suit against several guards and two prison officials under 42 U.S.C. § 1983 after he was assaulted by another inmate. Goka alleges a violation of his rights, under the Eighth and Fourteenth Amendments, to be secure from assault by other inmates. Goka also raises two pendent state negligence claims.

On defendants' motion, the district court granted summary judgment with respect to Goka's Section 1983 claim, and dismissed the pendent state claims for lack of jurisdiction. Goka appeals the entry of summary judgment. For the following reasons, we now reverse the judgment of the district court.

## FACTS

In 1983, Goka was an inmate at the Stateville Correctional Center in Joliet, Illinois. Gregory Williams, a member of the notorious "Vice Lords" gang, was also incarcerated at Stateville and resided in the cell next to Goka's. Defendants Paul Bobbitt, Carl Jordan, Bobby Parker and Travis Wheaton were all prison guards of various rank assigned to the unit in which Goka and Williams resided. Defendants Michael O'Leary and Richard DeRobertis were assistant warden and warden respectively at the time.

Several times throughout the summer of 1983, Williams purportedly harassed,

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

threatened and assaulted Goka. Goka maintains that he reported these incidents both orally and in writing to defendants Bobbitt and Jordan and requested their protection. The parties now dispute however whether any measures were actually taken to protect Goka.

On September 23, 1983, Williams left his unlocked cell and struck Goka in the eye with the handle of a broom which he had been allowed to keep in his cell.

Under a "tool control policy" in effect at the prison, all tools, defined as "any instrument of manual operation, minor equipment or implements," were to be controlled by prison staff when not in use. The policy specifically provided that maintenance tools that were used on a daily basis were to be locked in a storage chest at the end of each day and stored when not in use.

PRIOR PROCEEDINGS: Goka was proceeding *pro se* when he filed his original complaint. His request for appointed counsel, however, was subsequently granted, and an amended complaint was filed. The amended complaint alleges that defendants Bobbitt and Jordan knew that Goka was in immediate and substantial danger of assault by Williams and yet failed to take appropriate action to protect him; that they failed to enforce the tool control policy and allowed Williams to keep a broom in his cell; and that their actions demonstrated a deliberate indifference to, and callous disregard of, Goka's constitutional right to be protected from assault by other inmates. With respect to the remaining defendants, Goka alleges that they either knew, or "recklessly failed to learn," that the tool control policy was not being enforced; and, that their failure to enforce the policy demonstrated deliberate indifference and callous disregard for Goka's safety. Goka further alleges that the conduct of each of the defendants constitutes negligence.

The defendants opposed the amended complaint in what the district court (J. Aspen) referred to as a "*de facto* motion to dismiss" arguing that Goka had failed to state a claim under the Eighth Amendment; and, that the pendent state claims were barred by the Eleventh Amendment.

On December 5, 1985, the district court (J. Aspen) denied the motion to dismiss and granted Goka leave to file the amended complaint. *Goka v. Bobbitt*, 625 F.Supp. 319 (N.D.Ill.1985).

Shortly thereafter, the cause was transferred to Judge Leinenweber, and the matter was set for trial. One week prior to trial, however, Goka became dissatisfied with his appointed counsel and fired him. The district court granted counsel leave to withdraw and gave Goka until November 7, 1986 to retain new counsel.

Discovery, including the depositions of defendants Bobbitt and Jordan and the production of incident reports from the prison for the period beginning January 1982 and ending September 1983, had all been completed when counsel was given leave to withdraw. During the course of their depositions, both Bobbitt and Jordan denied any knowledge of prior assaults by Williams upon Goka, and that they had taken any action against Williams prior to the incident of September 23. While the incident reports were apparently lost, it appears from the record that there were at least thirteen incidents between January 1982 and September 1983 in which a prisoner had employed a broom handle as a weapon.

On at least two occasions prior to the November 7 deadline set by the court, Goka requested that new counsel be appointed to represent him. Those requests were still pending when defendants filed their motion for summary judgment contending that "there [were] no genuine issues of material fact as to plaintiff's claims and as a matter of law defendants [were] entitled to summary judgment." In support of their motion, defendants submitted a portion of Goka's deposition in which he states that he had complained to Bobbitt and Jordan about Williams' harassment, and that Jordan had given three warnings to Williams in response to those complaints. A copy of the Administrative Directive from the Illinois Department of Corrections regarding the use and control of tools within correctional facilities (the

"tool control policy") was also attached to the motion.

Goka made his third and final request for appointment of counsel after the motion for summary judgment was filed. The district court summarily denied that request finding that the representation provided by Goka's prior court-appointed counsel had been "exemplary".

Goka filed his *pro se* response on March 2, 1987.[1] On May 28, 1987, the district court granted summary judgment to the defendants on Goka's claims under Section 1983, and dismissed the pendent state claims for lack of jurisdiction. The district court found that defendants Bobbitt and Jordan had been "responsive" to Goka's complaints as Goka himself acknowledged in his deposition when he stated that Williams was given three verbal warnings; and that no "culpable refusal" to prevent the harm could be inferred from the defendants' failure to prevent it. While the district court acknowledged that the defendants' failure to enforce the tool control policy may have arguably constituted negligence, it found that Goka had failed to allege any facts demonstrating the conscious and culpable refusal to prevent impending harm proscribed by the Eighth

Amendment, or the abusive governmental conduct which the Fourteenth Amendment was designed to prevent.

## THE LAW

Originally designed to protect federal prisoners from barbarous treatment at the hands of their jailors, the Eighth Amendment prohibition against cruel and unusual punishment has been expanded under the Due Process Clause of the Fourteenth Amendment to impose upon both federal and state correctional officers and officials the obligation to take reasonable steps to protect inmates from violence at the hands of other inmates. *See Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); *Archie v. City of Racine*, 847 F.2d 1211, 1222–23 (7th Cir.1988) *(en banc); Richardson v. Penfold*, 839 F.2d 392, 395 (7th Cir.1988); *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988); *Duckworth v. Franzen*, 780 F.2d 645, 651 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).[2] When a correctional officer or prison official *intentionally* exposes a prisoner to a known risk of violence at the hands of another prisoner, he breaches the

1. The district court curiously notes in its opinion that Goka had failed to file a response to the summary judgment motion. The record, however, discloses that a timely response was filed. The adequacy of that response, which addresses a motion to dismiss under Rule 12(b)(6) rather than a motion for summary judgment under Rule 56, is indeed questionable. Goka clearly failed to recognize the distinction between a motion to dismiss and one for summary judgment, and the differing burdens of proof which are placed upon him. Under Rule 56, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but [his] response, *by affidavit or as otherwise provided in this rule* [deposition, interrogatory, etc.], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Boruski v. United States*, 803 F.2d 1421, 1428 (7th Cir.1986); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Goka has clearly failed to meet that burden. His failure to produce the type of documentation required under Rule 56, however, does not necessarily dictate an adverse ruling. Rule 56(e) provides that summary judgment shall be entered against him *only if appropriate.*

2. As a convicted criminal, Goka's constitutional claim arises under the Eighth Amendment Cruel and Unusual Punishment Clause, and not the Due Process Clause of the Fourteenth Amendment. *Walsh v. Mellas*, 837 F.2d 789, 791 n. 2 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecution ... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977). *See also Anderson v. Gutschenritter*, 836 F.2d 346, 348–49 (7th Cir.1988) (Due process, and not Eighth Amendment prohibition against cruel and unusual punishment, protects rights of a pretrial detainee not to be punished).

duty imposed upon him and deprives the victim of the security to which he is constitutionally entitled, and thus subjects himself to suit under 42 U.S.C. § 1983. *Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 758 (7th Cir.1988); *Richardson,* 839 F.2d at 394–95; *see also Duckworth,* 780 F.2d at 652. Negligence, or even gross negligence, on the part of a prison official will not establish a constitutional violation. *Daniels v. Williams,* 474 U.S. 327, 332–33, 106 S.Ct. 662, 665–66, 88 L.Ed.2d 662 (1986); *Smith–Bey,* 841 F.2d at 759; *Duckworth,* 780 F.2d at 653. The official's actions must be deliberate or reckless in the criminal sense. *Duckworth,* 780 F.2d at 652–53. *See also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment"); *Archie,* 847 F.2d at 1222 ("the state must protect one prisoner from another, at least when it acts (or stands by) deliberately or with indifference to the prisoner's plight"). Recklessness, in the pertinent sense, "implies an act so dangerous that the defendant's knowledge of the risk can be inferred," *Duckworth,* 780 F.2d at 652, and reflects an extreme or complete indifference to the value of human life. *Archie,* 847 F.2d at 1219.

## SUMMARY JUDGMENT

The defendants' burden on summary judgment was set out in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

477 U.S. at 323, 106 S.Ct. at 2553. Defendants have interpreted *Celotex* to require that they identify *only* those portions of the record which support their position on summary judgment, although there exists evidence to the contrary of which defendants are aware. Defendants maintain that the burden of producing such evidence was on Goka as the party opposing summary judgment, and that he failed to meet that burden. They conclude, therefore, that summary judgment was appropriate. We do not agree.

■ Defendants' argument ignores the principal purpose of the summary judgment rule which is "to isolate and dispose of *factually unsupported* claims or defenses." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553. When a party has obtained knowledge through the course of discovery, or otherwise, that a material factual dispute exists and yet proceeds to file a summary judgment motion, in hopes that the opposing party will fail or be unable to meet its burden in responding to the motion, he defeats that purpose; and, more importantly, violates the rules of procedure which govern the conduct of trial, specifically Rule 11.

Fed.R.Civ.P. 11 requires that every pleading and motion of a party represented by an attorney be signed by that attorney, certifying:

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact* and is warranted by existing law ... and that it is not interposed for any improper purpose....

(Emphasis added). It also provides that appropriate sanctions *shall* be imposed if its provisions are violated.

■ We find it difficult to conceive how counsel for the defendants could have certified to the district court that to the best of her knowledge, information, and belief there were no genuine issues of material fact precluding summary judgment, when defendants Bobbitt and Jordan had given deposition statements in which they denied any knowledge of prior incidents between Williams and Goka, or that they had taken any action against Williams prior to the assault on September 23. These statements are directly and materially inconsist-

ent with those made by Goka during the course of his deposition. The defendants' depositions were taken on April 25, 1985, more than seven months *before* the motion for summary judgment was filed, and were presumably available to defendants' counsel.[3] They clearly demonstrate the existence of a material issue of fact which would have precluded summary judgment with respect to defendants Bobbitt and Jordan.

Liability against Bobbitt and Jordan and each of the remaining defendants is also premised on their failure to enforce a tool control policy in effect at the prison. The district court found that while defendants' actions may have constituted negligence, Goka had failed to allege facts demonstrating that their actions were either deliberate or criminally reckless. In so ruling, the district court ignored one of the primary allegations of Goka's complaint—that defendants knew that the tool control policy was not being enforced.

To establish an Eighth Amendment violation, Goka must show that the defendants either had actual knowledge of the threat to his safety or that the risk of violence was so substantial or pervasive that the defendants' knowledge could be inferred, *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085 (factor to consider is "the extent of the threat to the safety of ... inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them"); *Duckworth*, 780 F.2d at 653 ("Punishment implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it"); *see also Walsh v. Mellas*, 837 F.2d 789, 793 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988); *Estate of Davis v. Johnson*, 745 F.2d 1066, 1071

(7th Cir.1984); that defendants failed to take reasonable measures to protect him, *Walsh*, 837 F.2d at 795–96; *Matzker v. Herr*, 748 F.2d 1142, 1149 (7th Cir.1984); and, that their actions were either deliberate or criminally reckless. *Richardson*, 839 F.2d at 394–95; *Duckworth*, 780 F.2d at 652–53.

When prison officials are unaware of the risk involved and violate a policy which may have prevented injury to an inmate, courts have generally found no constitutional violation. *See, i.e., Estate of Davis*, 745 F.2d at 1071–72 (violation of jail regulation regarding cell inspections could support a negligence claim, but not a claim of "callous indifference" actionable under § 1983 where defendant had no knowledge that inmate was subject to "strong likelihood" of violence); *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983) ("Even if defendants disregarded one or more of their established procedures, such as checking the cells every hour ... [their actions] do not constitute deliberate disregard for the possibility that [an inmate] would take his own life" where defendants lacked actual knowledge that the inmate was a suicide risk and took reasonable precautions to guard against self-infliction of harm).

A contrary result is reached, however, where defendants know of the danger or where the threat of violence is so substantial or pervasive that their knowledge could be inferred, and yet defendants fail to enforce a policy or take other reasonable steps which may have prevented the harm. *See, i.e., Walsh*, 837 F.2d at 795–96 (finding Stateville's screening procedures inadequate response to the known and pervasive risk of assault by gang members upon non-gang members who were confined to inves-

---

**3.** There is a serious question as to whether this information was equally available to Goka. Discovery had been conducted by Goka's court-appointed counsel, and was subject to a protective order prohibiting disclosure of "confidential" materials to Goka or to any other inmate at Stateville without the express written authorization of the Illinois Department of Corrections or further order of the district court. Upon his

withdrawal, Goka's counsel mailed several documents which had been produced during the course of discovery to Judge Leinenweber, believing that they contained "confidential" information and were thus subject to the protective order. The exact nature of those documents is unknown, as they were lost. The record, however, indicates that they were deemed by counsel to be "essential" to Goka's case at trial.

tigative status, and that failure to institute adequate procedures constituted deliberate indifference to inmate's right to security); *Shrader v. White,* 761 F.2d 975, 982 (4th Cir.1985) (remanding for determination whether prison's lax control of scrap metal used in machine shop created pervasive risk of harm from use of metal as weapon and evidenced a deliberate indifference on the part of prison officials to inmates' safety); *Matzker,* 748 F.2d at 1149–50 (a pretrial detainee who sufficiently alleges in his complaint that supervisory officials who know or should have known of the need for protective measures but failed to institute such measures, has alleged a violation of his rights under the Eighth and Fourteenth Amendments).

Judge Aspen reached a similar conclusion when he denied defendants' motion to dismiss Goka's complaint, holding that if the supervisors actually knew of a systematic lapse in enforcement of the tool control policy, their failure to enforce the policy "created a climate where violence was likely and thus, if proved, constituted deliberate rather than merely careless indifference to inmate safety." *Goka v. Bobbitt,* 625 F.Supp. 319, 322 and n. 4 (N.D.Ill.1985). Goka alleges in his complaint that the defendants had such knowledge, a fact which we believe can reasonably be inferred from the evidence.

The risk to inmate safety from misuse of maintenance and other tools as weapons is evident on the face of the tool control policy, which states that the primary purpose of the policy is "to minimize the potential danger to facility security from the misuse of tools," including their use as weapons. Facts such as a history of incidents involving the use of a broom as a weapon or prior requests for protection which had gone unheeded are also important in determining whether a prison official's failure to act constitutes a conscious disregard for an inmate's safety. *See Duckworth,* 780 F.2d at 653; *Jones v. Morris,* 777 F.2d 1277, 1280 n. 5 (7th Cir.1985) (facts such "as a history of accidents or a previous request for repairs that had fallen on deaf ears" are important in determining whether defendant acted with requisite state of mind).

In the present case, there were at least thirteen incidents within the two-year period preceding the attack on Goka in which a broom handle had been used by an inmate as a weapon. While this information was not made known to the district court, it was known to the defendants prior to the time they filed their motion for summary judgment, and evidenced a material factual dispute between the parties concerning the extent of the defendants' knowledge.

Considering the evidence in the light most favorable to Goka, we conclude that a genuine issue of material fact exists as to whether Bobbitt and Jordan knew of the risk of harm facing Goka and took any action to prevent that harm, and as to the extent of each defendants' knowledge concerning enforcement of the tool control policy. We, therefore, REVERSE the judgment of the district court and REMAND for further consideration in light of this opinion, including the question of sanctions.