**James Robert SWOFFORD, Plaintiff–Appellant,**

v.

**Sheriff Charles F. MANDRELL, Defendant–Appellee.**

**No. 90–2167.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1992.

Decided Aug. 4, 1992.

Rehearing and Rehearing En Banc Denied Sept. 15, 1992.

James R. Swofford, pro se.

Sallie G. Smylie (argued), Kirkland & Ellis, Roslyn C. Lieb, Chicago Lawyers' Committee, Chicago, Ill., for plaintiff-appellant.

James C. Cook (argued), John E. Sabo, Walker & Williams, Belleville, Ill., for defendant-appellee.

Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

On May 13, 1988, James Swofford was arrested and placed in a holding cell with ten inmates at the county jail. During the night, six of the inmates brutally beat and sexually assaulted him. Despite Swofford's repeated screams, no one came to his aid or inspected the cell for over eight hours. Swofford sued the Sheriff of Franklin County, Charles Mandrell, under 42 U.S.C. § 1983 for violating his Fourteenth Amendment rights. The district court dismissed Swofford's *pro se* complaint for failure to state a claim. We reverse.

I.

Swofford was arrested on suspicion of aggravated sexual assault at about 10:30 p.m. on May 13, 1988. About an hour later, he was taken to the Franklin County Jail in Benton, Illinois and placed in a holding cell with ten male inmates. During the night, six of the inmates jumped on Swofford, beat him in the face with their fists, kicked him in the head, back and genitals, urinated on him and sodomized him with a broom handle. Swofford screamed repeatedly for help, but neither Sheriff Mandrell nor any of his deputies came to aid him. No one inspected or guarded the cell for eight hours. It was not until 8:00 the next morning that Sheriff Mandrell came to the cell and, seeing Swofford's severe injuries, had him taken to a hospital for treatment. Swofford was taken to the hospital two additional times over the next two days for treatment of his injuries.

On August 15, 1989, Swofford filed a civil rights complaint against Sheriff Mandrell. The complaint alleged the above facts and requested $150,000 for "abuse and failure of protection under the 14th Amend[ment]." A magistrate judge, after denying Swofford's request for counsel, recommended that the complaint be dismissed because Swofford had stated a claim only for negligence or gross negligence. Swofford filed written Objections to the Report and Recommendation of the magistrate judge. While the Objections referred to the "gross negligence" of Sheriff Mandrell and other jailers, they also stated that Mandrell "had to know" that his actions "put the plaintiff's life in great danger" because of the charge against him. In addition, Swofford asserted that Mand-

rell and other jail personnel had failed to guard the cell in violation of Illinois county jail standards. The district court adopted the magistrate's recommendation and dismissed the cause for failure to state a claim.

## II.

In reviewing the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), we must accept as true all the plaintiff's well-pleaded factual allegations and inferences reasonably drawn from them. *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir.1990). The plaintiff's claim must survive if "relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Sheriff Mandrell argues that Swofford's complaint fails to meet even this low threshold because it does not allege anything beyond negligence or gross negligence on the part of the Sheriff.

■ Swofford, as a pretrial detainee, is constitutionally protected from punishment by the due process guarantee of the Fourteenth Amendment. A pretrial detainee's right not to be punished is at least as expansive as a convicted prisoner's freedom from cruel and unusual punishment under the Eighth Amendment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). The due process clause protects pretrial detainees from deliberate exposure to violence and from the failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted. *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988); *see also K.H. v. Morgan*, 914 F.2d 846, 849 (7th Cir.1990) (state may not "deliberately and without justification place a criminal defendant in a jail or prison in which his health or safety would be endangered"). Our recent decisions have held that a due process violation requires "deliberate indifference" to or "reckless disregard" of the detainee's right to be protected from harm. *See Salazar v. City of Chicago*, 940 F.2d 233,

240–41 (7th Cir.1991); *Martin v. Tyson*, 845 F.2d 1451, 1457–58 (7th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). *But see Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984) (deliberate indifference not required because of Fourteenth Amendment's broader protection than that of Eighth Amendment). A detainee must show that the state actor knew of the risk or "that the risk of violence was so substantial or pervasive that the defendants' knowledge could be inferred." *Goka v. Bobbitt*, 862 F.2d 646, 651 (7th Cir.1988).

■ We have little difficulty concluding that Swofford has stated a claim under the Fourteenth Amendment. First, we note that Federal Rule 12(b)(6) gives the plaintiff the benefit of all reasonable and consistent inferences from the allegations, and requires only a short and plain—that is, "nonjargonistic"—statement of the facts constituting a claim. *Trevino v. Union Pacific R.R. Co.*, 916 F.2d 1230, 1234 (7th Cir.1990). Second, a *pro se* complaint like the one before us, "however inartfully pleaded," must be construed liberally and held to less stringent standards than those applied to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). In addition, the court should consider allegations contained in the other court filings of a *pro se* plaintiff, such as those in Swofford's Objections to the Report and Recommendation of the magistrate judge. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Matzker*, 748 F.2d at 1148 n. 5; *Todaro v. Bowman*, 872 F.2d 43, 44 n. 1 (3d Cir.1989).

■ Swofford's allegations are adequate to survive dismissal. The facts themselves—including the failure to inspect the cell for over eight hours despite Swofford's screams, the accessibility of a makeshift weapon in the cell and the placement of Swofford into a crowded and dangerous population, given the charge against him—are indeed quite shocking, and could give rise to an inference of knowledge on the part of the defendant. *See Goka*, 862 F.2d at 651. Moreover, even if Swofford were

required to plead specifically the state of mind of the defendant, he has sufficiently done so: his complaint charges Sheriff Mandrell with "abuse" and his Objections state that the Sheriff "had to know" that Swofford's life was placed "in great danger" by his placement in the holding cell with the ten other inmates. These allegations surely meet the "nonjargonistic" requirements for surviving a Rule 12(b)(6) motion, particularly given Swofford's *pro se* status. Indeed, even read jargonistically, the phrase "had to know" indicates a level of intent at least as high as deliberate indifference or reckless disregard. Swofford also alleged that the Sheriff's failure to inspect the holding cell for over eight hours violated Illinois county jail standards, which require observation at least twice every hour.[1] Similarly, the inmates' access to a broom, which was used to sodomize Swofford, apparently violated the jail's tool control policy as well as state regulations.[2] In *Goka v. Bobbitt*, this Court held that inmates' access to makeshift weapons such as a broom can constitute a violation of a prisoner's constitutional right to be protected from harm. 862 F.2d at 652; *see also Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986); *Shrader v. White*, 761 F.2d 975, 982 (4th Cir.1985). Finally, the placement of Swofford, who was charged with sexual assault, into a cell with ten inmates charged with other crimes, may also have

been unauthorized under jail regulations.[3] While the potential violations of these regulations may not themselves constitute due process violations,[4] they do support a conclusion that the Sheriff may have acted recklessly or with deliberate indifference to Swofford's safety.

Sheriff Mandrell relies almost exclusively on *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), in which the Supreme Court held that mere negligence on the part of prison officials does not implicate the due process clause. It is true that Swofford's complaint refers generally to the Sheriff's "gross negligence." As described earlier, however, Swofford's allegations also include specific facts that meet the higher standard of recklessness (or deliberate indifference). In particular, Swofford alleges that the Sheriff "had to know" of the serious danger in which he was placing Swofford, and that the Sheriff's acts constituted "abuse." This case is also factually distinguishable from *Daniels* and *Davidson*. In *Daniels*, the plaintiff slipped on a pillow that had been negligently placed on a stairway by a prison officer. In *Davidson*, a prison officer neglected to read a note sent by the plaintiff warning of a potential assault by another inmate. In both cases there was nothing beyond ordinary negligence on the part of the prison

---

1. Illinois' county jail standards require adequate supervision and frequent personal observation of detainees:

   The primary function of any jail is the safe-keeping and control of persons charged with or convicted of a crime. In a detention setting, the gamut of human emotions and behavioral reactions to them can be seen—depression, calm, rage. Twenty-four hour supervision by trained personnel is necessary to maintain a safe and secure facility.

   . . . .

   There must be sufficient officers present in the jail, awake and alert at all times, to provide supervision while detainees are in custody.

   (A) A jail officer shall provide personal observation, not including observation by a monitoring device, at least once every 30 minutes.

   . . . .

Ill.Admin.Code tit. 20, § 701.130(a)(2), (b)(1) (1985).

2. Ill.Admin.Code tit. 20, §§ 701.120(b)(1)(H), 701.140(b)(5)(A) & 701.140(b)(12) (requiring that all tools be securely stored).

3. The law provides that "[t]he detainee shall be assigned to suitable quarters," Ill.Admin.Code tit. 20, § 701.40(b)(15)(A), and further states:

   Jail staff . . . shall consider the status of new detainees (for example, pre- or post-trial detention, etc.) sex, health, age, type of offense charged, prior record if known, and whether there are any accomplices or material witnesses already within the jail from whom the person should be separated.

   *Id.* at § 701.40(b)(15)(B).

4. *But see Shango v. Jurich*, 681 F.2d 1091, 1099 (7th Cir.1982) (prison regulations may give rise to protected liberty interest).

officers.[5] The facts as alleged here, in contrast, support a potential finding of deliberate indifference. We have made clear that, *Daniels* and *Davidson* notwithstanding, "total unconcern for a prisoner's welfare—coupled with serious risks—is the functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).

Sheriff Mandrell also argues that his acts could not have risen above negligence because there was no report of a prior threat or attack on the detainee. Several of our cases have considered such reports in finding that officials acted with knowledge or recklessness. *See, e.g., Santiago v. Lane,* 894 F.2d 218, 223–24 (7th Cir. 1990); *Goka,* 862 F.2d at 647–48. "A prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill,* 944 F.2d at 349. But when prison officials themselves actively and knowingly (or recklessly) place a detainee in a particular situation that is dangerous, then such a report becomes superfluous. That situation is described by Swofford's complaint. Moreover, Swofford screamed repeatedly during the attack, and his screams should have notified the jail officers of the serious threat to his safety. When asked at oral argument why Swofford's screams did not constitute the sort of "report" arguably needed to establish liability, Sheriff Mandrell's counsel replied simply that "a report is a report." Indeed, a report is a report; and Swofford did all that could be expected of someone in his situation to make a "report" during the eight hours in which he was being brutally beaten and assaulted in an unsupervised holding cell.[6]

### III.

Swofford also challenges the magistrate judge's decision not to appoint counsel for him. We review the judge's decision for an abuse of discretion, considering the familiar five-factor standard applicable to the appointment of counsel:[7] (1) the merit of the indigent plaintiff's claim; (2) his ability to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent plaintiff to present the case; and (5) the complexity of the legal issues. *McNeil v. Lowney,* 831 F.2d 1368, 1371–72 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1236, 99 L.Ed.2d 435 (1988); *Merritt v. Faulkner,* 697 F.2d 761, 764 (7th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). The first factor, the merit of the plaintiff's claim, is foremost among the factors. *Caruth v. Pinkney,* 683 F.2d 1044, 1048 (7th Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983).

The magistrate judge discussed only two of these factors, noting that the case "is

---

5. Sheriff Mandrell's assertion that "[t]he Supreme Court has ... not[ed] the inadequacy of negligence *and gross negligence*" for a Fourteenth Amendment claim, Mandrell Br. at 9, is false. In fact, the Court in *Daniels* expressly noted that it was *not* deciding whether "gross negligence" was sufficient to trigger the protections of the due process clause. 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3. It is true, however, that recent cases in our circuit have indicated that gross negligence is insufficient for a due process violation in this context. *See Salazar,* 940 F.2d at 240–41; *Martin,* 845 F.2d at 1457–58.

6. Because we decide that Swofford's complaint must be reinstated, we do not need to address his argument that the district court erred in failing to grant leave to amend before dismissing the complaint. On remand, Swofford will have an opportunity to seek leave to amend, and such leave will of course be "freely given" pursuant to Fed.R.Civ.P. 15(a).

7. We recently added a threshold consideration to this five-factor analysis: whether the indigent made any effort to obtain counsel. *Jackson v. County of McLean,* 953 F.2d 1070, 1072–73 (7th Cir.1992). In *Jackson,* we explained that "when deciding whether or not to grant a request for counsel under [28 U.S.C.] § 1915(d), the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts." *Id.* at 1073. Because the threshold requirement in *Jackson* does not have retroactive application, however, *id.,* no such inquiry was required in this case.

not sufficiently complex" to warrant counsel and that the plaintiff's "likelihood of success on the merits is, at this point, questionable." As our discussion indicates, Swofford's claim does have merit. Moreover, the question presented by the first factor is not whether the plaintiff's likelihood of success is questionable, but whether his claim is "colorable," meaning that it has "some merit in fact and law." *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir.1981). As for the complexity of the legal issues, we need only point to the difficult and subtle question of the state of mind required for a Fourteenth Amendment violation, a question that we held "too complex" for a *pro se* plaintiff to understand or present to a jury in *Merritt*, 697 F.2d at 765. From our review of this case, we are also convinced that the second, third and fourth factors call for the appointment of counsel to assist Swofford in pursuing his claim. During his incarceration Swofford has been unable to investigate crucial facts; his claim is likely to turn on the credibility of witnesses, making counsel important to ensuring that the truth is exposed; and he is unable to present his case adequately without counsel.

We therefore will require the district court to appoint counsel for Swofford on remand.

## IV.

For the foregoing reasons, the judgment of the district court is REVERSED and the cause is REMANDED.