**George FREEMAN, Plaintiff,**

**v.**

**Salvador GODINEZ, et al., Defendants.**

**No. 96 C 6265.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 11, 1998.

---

George Freeman, Pontiac, IL, pro se.

Thomas Lee Ciecko, Illinois Atty. General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Salvador Godinez, James M. Schomig, Capt. Manning, Sgt. Shega, Lt. Thomas.

Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Joe Curry, John Doe, C/O.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiff George Freeman, an inmate currently residing at the Western Illinois Correctional Center, brought this 42 U.S.C. § 1983 action against various officials of the Illinois Department of Corrections alleging that while a resident of the Stateville Correctional Center, he was brutally beaten by other inmates because the defendants failed to protect him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. In response to his complaint, defendants have filed a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6). For the reasons stated below, this motion is denied.

## BACKGROUND

Plaintiff describes the events leading up to the beating he suffered by detailing the history of his former gang affiliation with the Four Corners Hustlers. He relates that because of gang killings outside the institution, on October 22, 1994, there was a stabbing of inmate Michael Henderson in Stateville. He further states that defendants Schomig and

Currie spoke to plaintiff about gang activity and their wish that plaintiff keep them informed about it. After this incident, the institution was on lockdown for two days. During that time plaintiff was again asked by the Warden or the Major about his views regarding the gang activity. The day after the lockdown plaintiff says that he was threatened with death by other inmates if it was determined that he was a snitch. Plaintiff does not state here or anywhere in his complaint who made such a threat. He states that again he was called by defendants and "told that he had better let them all know what they wanted to know, cause they said they had already received word that plaintiff life was in danger so I .had better cooperated." (sic) (Comp. Para. 12). Then on October 26, at about 1:00 p.m. in a well lit cellhouse, plaintiff says that three prisoners stabbed him in his back, chest, head and face, while beating him with pipes. (Comp. Para. 13–14). He then states that Captain Manning and Lieutenant Thomas and Sergeant Shega, assigned to plaintiff's living unit, inter alia, knew that plaintiff was in trouble for meeting with the warden and major repeatedly (Comp. Para. 15). And in the introduction to his complaint, entitled "Nature of the Case," (sic), he states that "plaintiff was told by said defendants that according to their data, plaintiff was next on a 'hit list,'" and that defendants failed to take the necessary steps to ensure his safety.

Plaintiff proposes two theories of defendants' deliberate indifference. On the one hand he alleges that defendants were responsible for setting him up to be beaten as retaliation for his refusal to provide them with gang information. On the other hand, he says that they failed to act to protect him even though they knew he was on a hit list and that his life was in danger, thus acting with reckless disregard for his safety. In either case, he alleges that defendants knew of the danger to him, and that they drew the inference from those facts that his life was in danger, yet they failed to protect him. He sues the following defendants: Salvador Godinez, James Schomig, Major Joe Curry, Captain Manning, Lieutenant Thomas, Sergeant Shega, and John Doe, correctional officer, all employees of the Stateville Correctional Center.

Defendants do not delve into the facts in their motion to dismiss. Instead they rely, in large part, on their theory that Freeman failed to exhaust administrative remedies and that therefore his case should be dismissed. They also say that the defendants were not deliberately indifferent to his safety. They say that there are no allegations that three of the defendants, Manning, Thomas, and Shega, knew of the risk of assault from plaintiff's former gang.

### STANDARD OF LAW

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the complaint. *See* Fed.R.Civ.P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, because plaintiff is proceeding *pro se,* the court construes his pleadings more liberally than those submitted by an attorney, and the court should consider allegations contained in all of the plaintiff's filings. *Hughes v. Rowe,* 449 U.S. 5, 9–10 n. 8, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir.1992). Defendants argue that anything Freeman alleges in his response to their motion to dismiss comes too late to save his complaint. This is incorrect. In *Swofford,* a case similar to the instant case, the court allowed consideration of other pleadings in reviewing a motion to dismiss. "In addition, the court should consider allegations contained in other court filings of a *pro se* plaintiff...." *Swofford, supra,* at 549, citing *Hughes, supra,* at 10. Additionally, as long

as they are consistent with the allegations of the complaint, a party may assert additional facts in his or her response to a motion to dismiss. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir.1996); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439–40 (7th Cir. 1994); *Hrubec v. National Railroad Passenger Corp.*, 981 F.2d 962, 963–4 (7th Cir.1992). Defendants further misstate the law in their reply to response to motion to dismiss, in which they state that the motion is to be decided on factual allegations set forth in the complaint. But as defendants should be well aware, a plaintiff in a federal suit need not plead facts; conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. Fed.R.Civ.P. 8(a)(2); *Jackson v. Marion County*, 66 F.3d 151, 153–4 (7th Cir.1995).

### ANALYSIS

■ A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment imposes a duty upon prison officials to "take reasonable steps to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to hold a prison official liable under the Eighth Amendment, the plaintiff must show that the deprivation was "sufficiently serious" and that the prison official's state of mind was one of "deliberate indifference" to inmate health or safety. *Id.* In *Farmer* the Supreme Court undertook the task of defining "deliberate indifference" and held that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer* at 837. The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *Id.* Freeman has alleged sufficiently that the defendant officials were deliberately indifferent in failing to prevent his attack. *Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir.1984), holds that no prior assault is necessary to establish that there is a substantial risk to inmate safety. *See also Walsh v. Mellas*, 837 F.2d 789 (7th Cir.1988). Freeman alleged that defendants knew he was on a hit list, they interrogated him about gang activities, and may have themselves put him in a position of danger as a result. Further, in his response to defendant's motion to dismiss, plaintiff states that he put defendants on notice of his need for protection when he twice requested protection and was denied each time.

■ Defendants' reliance on the exhaustion argument is misplaced. The defendants could have done nothing through the grievance procedure to compensate plaintiff for his injuries once they occurred, because defendants' administrative process does not offer such a remedy. Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), the remedy must be *available* through the administrative process or it need not be utilized. It was not "available." Monetary compensation for physical injury resulting from a constitutional tort is not available through the grievance procedure. Therefore plaintiff was not required to utilize it.

Further, defendants argue that plaintiff needed to exhaust the grievance procedure to seek protective custody. However, whether or not plaintiff sought protective custody relates to the issue of defendants' knowledge of the risk of imminent serious harm to plaintiff, not to whether he can proceed with a claim in federal court. Defendants therefore misapply the exhaustion requirement to actions unrelated to the assault.

■ Defendants are correct in stating that any reference to what the defendants

should have known, as opposed to actually known in fact, is insufficient to state a claim. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). With regard to defendants Manning, Thomas and Shega, defendants argue that they should be dismissed because there are no allegations that they were aware of plaintiff's risk of imminent harm. However, in his Complaint, Paragraph 15, plaintiff states, inter alia, that "they knew plaintiff was in trouble for meeting with the warden and major." Therefore, although references to what defendants should have known are inadequate at law to state a claim, nevertheless, plaintiff does allege that these defendants were aware of the risk to him. Therefore they will not be dismissed from the case. The court takes no position at this time as to whether plaintiff is able to prove what alleges in his complaint, including those allegations relating to each defendant's knowledge of the risk of harm to him. Nevertheless, in a motion to dismiss, the court takes as true all of the allegations, and therefore, the court denies defendants' motion to dismiss.

## *CONCLUSION*

The court denies defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Status is set for 9:00 a.m., April 10, 1998. **IT IS SO ORDERED.**