**Marina ZARNES, Plaintiff–Appellant,**

**v.**

**Randall RHODES, Sergeant # 402, Officer of the Sheriff's Department, Don M. Lamb, U.S. Marshal Service, Defendant–Appellee.**

**No. 94–2185.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1995.

Decided Aug. 24, 1995.

Patrick J. Lamb, Paul A. Haskins (argued), Katten, Muchin & Zavis, Chicago, IL, for Marina Zarnes.

Patrick J. Londrigan, Heyl, Royster, Voelker & Allen, Springfield, IL, Karen L. Kendall, Brad A. Elward (argued), Heyl, Royster, Voelker & Allen, Peoria, IL, for Randall Rhodes.

James A. Lewis, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Springfield, IL, for Don M. Lamb.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Marina Zarnes, presently incarcerated in a federal penitentiary in California, appeals from the district court's dismissal of two of her claims and grant of summary judgment on her remaining claims, all brought under 42 U.S.C. § 1983, against defendant Randall Rhodes alleging deprivations of her due process rights while a pre-trial detainee at the Sangamon County, Illinois, Jail. Zarnes also appeals from the court's denial of her motion for appointment of counsel. We now affirm all of the court's rulings except its dismissal of Zarnes's claim alleging knowing endangerment, on which we reverse and remand.

## I.

On July 14, 1989, Marina Zarnes was indicted on federal drug charges and, pursuant to an agreement between the United States Marshall's Service and the Sangamon County Sheriff's Department, was housed at the Sangamon County Jail pending trial. On January 15, 1990, Zarnes argued with other inmates about the selection of the television channel. The fight did not include any physical contact, but upon hearing from one inmate that Zarnes was to blame, Rhodes, the guard in charge at the time, placed Zarnes in "lock-down." He did not then give Zarnes any reason for his action.

Zarnes remained segregated from the general population for nineteen days without receiving any explanation other than a pre-printed form stating:

In that you are an inmate ... under a PRE–TRIAL DETAINEE status, ... it has been determined that your conduct within the confines of General Population Housing Unit is unacceptable.

Authority of this change in your status, is warranted without the 'Due–Process' clauses of a Hearing before the Disciplinary Council of this facility because of your non-convicted disposition and the fact that your presence in a General Population Unit, gives cause for the safety of other Inmates, the Staff and/or the security of this facility.

Zarnes shared a segregation cell with Cathy Crowder, a mentally-ill inmate. On Zarnes's second day, Crowder physically attacked Zarnes, knocking her off her bunk, hitting her head against the concrete wall, and kicking her. Zarnes suffered injuries to her head and back that continue to cause her pain.

After the assault, guards took Zarnes to a hospital where she was treated. Upon returning to the jail, Zarnes continued to complain of pain and was given pain relievers several times during that night and the next day. Zarnes then notified defendant United States Marshall Don Lamb of her persistent pain. Lamb ordered two marshals to transport Zarnes to the hospital where x-rays were taken, although not of her head.

Eventually, Zarnes was convicted and sentenced on various federal drug charges. *See United States v. Zarnes*, 33 F.3d 1454 (7th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995). On December 6, 1991, Zarnes filed a *pro se* complaint against Rhodes, Lamb, and twenty unnamed defendants. She alleged that Rhodes had placed her in lock-down for punitive reasons and without a hearing in violation of her right to due process. Zarnes further asserted that Rhodes had violated her due process rights by knowingly endangering her safety and by failing to provide adequate medical care after Crowder's assault. Zarnes also brought the latter claim against Lamb.

On October 20, 1992, the district court granted Zarnes's motion to amend her complaint[1] and then dismissed the claims against Rhodes. On May 5, 1993, the court *sua*

---

1. Although the district court granted this motion, it apparently simply added Zarnes's new allegations to her original pleading; in the court's later order dismissing claims and its orders granting summary judgment to both Lamb and Rhodes, the court relied on allegations only contained in Zarnes's first complaint. We therefore refer to both documents as one.

*sponte* reinstated Zarnes's claim alleging placement in segregation without due process. Rhodes subsequently filed a motion to dismiss that the court converted to a motion for summary judgment. The court forwarded this motion to Zarnes in California, where she was incarcerated, giving her fourteen days from the day it was sent in which to respond. Zarnes prepared a motion for an extension of time but mailed it to the United States Attorney instead of the court. One day after her response was due but not filed, May 6, 1994, the district court granted summary judgment for Rhodes. The court had previously granted summary judgment for Lamb on October 26, 1993, finding that Zarnes could not prove he was responsible for any constitutional violation. Zarnes appealed and we appointed counsel to represent her in her appeal.

## II.

Zarnes first challenges the district court's refusal to appoint her counsel. She next asserts that she adequately stated due process claims of knowing endangerment and indifference to her serious medical needs. Finally, Zarnes argues that the court erroneously granted summary judgment for Rhodes on her claims concerning her placement in segregation without due process.

### A.

█ Civil litigants do not have a right, either constitutional or statutory, to counsel. *Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir.1992). Section 1915(d), however, grants district courts the discretion to request counsel to represent indigents in appropriate cases. 28 U.S.C. § 1915(d). We review the court's decision not to appoint counsel for an abuse of discretion and will only reverse when that denial amounts to a violation of due process. *Jackson,* 953 F.2d at 1072.

█ As a threshold matter, a litigant must make a reasonable attempt to secure private counsel. *Id.* at 1072–73. Before filing her motion for counsel, Zarnes had made no such effort. After the court denied her motion, Zarnes contacted several attorneys. The

court denied her motion for reconsideration after finding that Zarnes's endeavors were not reasonable because the lawyers she solicited were either not licensed to practice in Illinois or did not practice criminal law. Zarnes then contacted three attorneys from Springfield, Illinois, who all declined to take her case. The court again denied her motion.

In our view, Zarnes made a reasonable attempt to hire an attorney to represent her. After learning that she needed to try to retain counsel, Zarnes made persistent efforts toward that end. At the time, she was incarcerated 2,000 miles away and had no access to a Springfield telephone directory. She therefore could not be expected to obtain easily the names of available attorneys. Given the circumstances her effort was sufficient.

After meeting this threshold burden, the plaintiff must demonstrate that her case is one appropriate for the appointment of counsel. In *Maclin v. Freake,* 650 F.2d 885, 887–89 (7th Cir.1981), we set out a nonexhaustive list of five factors for courts to consider when deciding such a motion: (1) the merits of the plaintiff's claims; (2) whether the plaintiff can investigate crucial facts; (3) whether trained counsel will better expose the truth; (4) the plaintiff's ability to present the case; and (5) the complexity of the relevant legal issues. More recently, however, we stated that "the necessary inquiry is simpler than *Maclin*'s multi-factorial approach implies; given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?" *Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 438, 126 L.Ed.2d 372 (1993). Thus, courts now have an alternative, easier method for deciding these motions, one that we now employ.

█ Zarnes's claims were not so complex as undisputedly to require counsel. In *Swofford v. Mandrell,* 969 F.2d 547, 552 (7th Cir.1992), the plaintiff alleged a due process violation for placing him in a cell with ten other inmates who subsequently beat him. There, we reversed the court's decision to deny counsel because of the "difficult and

subtle question of the state of mind required [to prove] a Fourteenth Amendment violation." *Id.* at 552. We did not, however, dictate the automatic appointment of counsel whenever a litigant alleges a violation of due process. While *Swofford* involved a claim similar to Zarnes's allegations, here it appeared from her pleadings that Zarnes understood the elements of her claims and the legal authority supporting them. *See Barnhill v. Doiron,* 958 F.2d 200, 203 (7th Cir. 1992). Zarnes also recognized relevant facts and accordingly attached letters from other inmates attesting to Crowder's mental illness and sought a copy of the jail's policies and procedures. These efforts demonstrate Zarnes's ability to investigate the underlying facts despite her incarceration in California, as well as her apparent ability to present her claims. Zarnes's counsel on appeal maintains that Zarnes has a problem understanding English, but the court also spoke with Zarnes by telephone, and we credit its view of her proficiency over that of her counsel.[2]

Were we to have had the responsibility for original decision on Zarnes's motion, we may have chosen to appoint counsel to represent her after she attempted and failed to retain a private attorney. That is not our role, however, and we cannot hold that the aspects of this case that may trouble us—Zarnes's imprisonment far from Illinois and the fact that she received help from other inmates to prepare her pleadings—always compel appointment of counsel. We conclude that the court did not abuse its discretion in determining that Zarnes was capable of litigating her claims.[3]

### B.

■ Zarnes next argues that the district court erroneously dismissed her claims of knowing endangerment and indifference to her medical needs. We review the district court's FED.R.CIV.P. 12(b)(6) dismissal for failure to state a claim *de novo. Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995). We "accept all the factual allegations in the complaint and draw all reasonable inferences from these facts in favor of the plaintiff." *Arazie v. Mullane,* 2 F.3d 1456, 1465–66 (7th Cir.1993). A complaint can be dismissed only if "it is beyond doubt that the nonmovant can plead no facts that would support his claim for relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *Pro se* complaints are held to less stringent standards than those drafted by attorneys, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), so we must construe Zarnes's complaint liberally in determining whether the court properly dismissed these claims.

### 1.

■ The state cannot, consistent with the Fourteenth Amendment's due process clause, punish pre-trial detainees. *Bell v. Wolfish,* 441 U.S. 520, 534–35, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). This right to be free from punishment is "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *see also Bell,* 441 U.S. at 545, 99 S.Ct. at 1877 ("[P]retrial detainees, . . . retain at least those constitutional rights that we have held are enjoyed by convicted prisoners."). The Eighth Amendment requires the government to protect prisoners from each other, *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir.1991), *cert. denied,* 503

---

2. We often find counsel necessary when a case involves complex medical evidence. *See, e.g., Jackson,* 953 F.2d at 1073; *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 429 (7th Cir. 1991); *Merritt v. Faulkner,* 697 F.2d 761, 765 (7th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). Zarnes alleged indifference to her serious medical needs, but, as discussed below, that claim has no merit and does not warrant the appointment of counsel. *See Farmer,* 990 F.2d at 321.

3. Zarnes's opening brief made no argument regarding the court's grant of summary judgment for defendant Lamb. Nor did her caption, notice of appeal, or jurisdictional statement mention him. Zarnes made no argument on the merits of the court's decision regarding Lamb but instead only asserts that we must reinstate her claims against Lamb if we find that the district court abused its discretion in denying her motions for appointment of counsel. In that we affirm the court on this point, we also affirm summary judgment for Lamb.

U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992), and prison officials likewise must not endanger pre-trial detainees. *Swofford,* 969 F.2d at 550; *see also DeShaney v. Winnebago County DSS,* 489 U.S. 189, 199, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989) ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions.") (citations omitted).

■ To demonstrate a constitutional violation, the plaintiff must prove that prison officials were deliberately indifferent to a substantial risk to her safety. *McGill,* 944 F.2d at 347; *see also Swofford,* 969 F.2d at 550–51 (applying this mental state to a pre-trial detainee's due process claim of endangerment). The district court dismissed Zarnes's endangerment claim after finding that Zarnes only alleged that Rhodes had acted negligently in placing her in a cell with Crowder. *See Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (negligent conduct does not constitute a Fourteenth Amendment deprivation); *see also Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (same). While Zarnes asserted negligence by Rhodes, she also alleged that he was "deliberately indifferent" and showed "deliberate or reckless disregard" for her rights. These allegations suffice to withstand a 12(b)(6) motion. *See Swofford,* 969 F.2d at 550.

The district court also held that Zarnes only alleged that Crowder was mentally ill, not that she posed any, let alone a serious, danger or that Rhodes knew of that possibility. *See McGill,* 944 F.2d at 349 (have to show actual knowledge of the risk, proving that the officials should have known about it is not enough); *see also Farmer v. Brennan,* — U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."); *Estate of Davis v. Johnson,* 745 F.2d 1066, 1071 (7th Cir.1984) ("[T]here must be a 'strong likelihood' rather than a

'mere possibility' that violence will occur."). Zarnes's complaint, however, stated that Rhodes knew that Crowder presented an "imminent potential" for assault and that placing Zarnes in a cell with Crowder posed a "substantial risk of danger." Once again, in light of our duty to read this *pro se* complaint liberally, we conclude that Zarnes made adequate allegations and the court therefore should not have dismissed this claim.

### 2.

Zarnes also alleged that Rhodes deprived her of her due process rights by failing to provide adequate medical care after the attack by Crowder. *See Murphy,* 51 F.3d at 717; *Salazar v. City of Chicago,* 940 F.2d 233, 237 (7th Cir.1991). The district court dismissed this claim, but did so without discussion.

■ A due process claim alleging indifference to medical needs also requires allegations and proof of deliberate indifference by the government actor. *Id.* at 238. Zarnes claimed that Rhodes failed to supervise subordinate guards and allowed them to provide her with "grossly inadequate" care. Nowhere did she allege, even unartfully, the necessary mental state. The court properly dismissed this cause of action.

### C.

■ Finally, Zarnes challenges the court's grant of summary judgment for Rhodes on her claims alleging placement in segregation without due process. We review the district court's decision *de novo, Cliff v. Bd. of School Com'rs of Indianapolis,* 42 F.3d 403, 409 (7th Cir.1994), and review the record, and all reasonable inferences which can be drawn from it, in the light most favorable to Zarnes, the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists only where the potential evidence would permit a reasonable finder of fact to return a verdict for the non-moving party. *Liberty Lobby,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

### 1.

■ The government lawfully can incarcerate persons awaiting trial on criminal charges but cannot punish them, *Bell,* 441 U.S. at 534–35, 99 S.Ct. at 1871–72, so courts must determine whether the conditions of confinement are imposed with an intent to punish or only pursuant to a legitimate administrative purpose. *Id.* at 538, 99 S.Ct. at 1873. "[I]f a restriction is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees *qua* detainees." *Id.* at 539, 99 S.Ct. at 1874.

■ The state cannot place a detainee in segregation for no reason, *Hawkins v. Poole,* 779 F.2d 1267, 1269 (7th Cir.1985), but maintaining jail security comprises an appropriate justification for inflicting restrictions on pretrial detainees. *Bell,* 441 U.S. at 540, 99 S.Ct. at 1874. In the instant case, Sergeant Rhodes's motion to dismiss (converted to one for summary judgment) stated that he put Zarnes in administrative segregation for her protection and the protection of other inmates following Zarnes's verbal confrontations with other prisoners. Rhodes swore in his affidavit that his action was pursuant to the Sheriff Department's policies and procedures that allow placement in segregation only when housing an inmate in the general population "would pose a serious threat to life, property, self, staff or other inmates or to secure and orderly operations of the facili-

ty." The district court found that these declarations adequately established that Rhodes assigned Zarnes to segregation for a legitimate reason, thereby making his conduct constitutional, a decision with which we agree.

Zarnes argues on appeal that Rhodes's motion and his affidavit contradict themselves as well as the notice Zarnes received stating the reason for her placement in segregation. That pre-printed document declares that Zarnes's conduct was unacceptable, but in context that statement does not raise a genuine issue of whether her segregation was a punitive rather than a preventative measure. Indeed, the notice goes on to state that Zarnes could be assigned to segregation without a hearing because her "unacceptable" conduct posed a threat to her and other inmates' safety, as well as prison security. The form thus tracks the language of the jail's policies and procedures and is consonant with Rhodes's motion and affidavit. Furthermore, nothing else in the record indicates that Rhodes placed Zarnes in segregation as punishment for the crimes she had allegedly committed and for which she was awaiting trial or for her verbal confrontation or that her placement in segregation was an arbitrary response to the situation.[4] The district court therefore correctly granted Rhodes's motion for summary judgment on this claim.[5]

### 2.

Zarnes also asserts that the Illinois statutes entitled her to a hearing before her assignment. In *Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983), the Supreme Court held that placement of a convicted prisoner in administrative segregation does not require the government to first provide due process

---

4. We note that Zarnes did not respond to Rhodes's motion because she mistakenly mailed her motion to extend time to the United States Attorney, not the district court. While this is unfortunate, Zarnes previously had filed correctly numerous motions and other documents with the district court.

5. We decline Zarnes's invitation to hold that every placement in administrative segregation con-

stitutes punishment of a pre-trial detainee. Contrary to Zarnes's position, *Martinez v. Turner,* 977 F.2d 421, 423 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1658, 123 L.Ed.2d 277 (1993), does not adopt that proposition. Rather, the Eighth Circuit held that placing a pre-trial detainee in segregation because he refused to work equals punishment, a situation different from the instant case.

protections. Likewise, administrative segregation of a pre-trial detainee for a non-punitive reason does not require such procedures. The *Hewitt* court also held, however, that states can create constitutionally protected liberty interests by enacting statutes or regulations that use mandatory language in establishing procedures for prison administration. *Id.* at 471–72, 103 S.Ct. at 871–72; *see Gilbert v. Frazier,* 931 F.2d 1581, 1582 (7th Cir.1991) (Illinois regulations regarding prison disciplinary segregation create a right to a pre-imposition hearing).

Zarnes asserts that the Illinois County Jail Standards pertaining to discipline, 20 IL ADC § 710.16, establish just such a liberty interest because they are couched in compulsory terms. Therefore, Zarnes continues, the state had to provide her with due process before putting her into segregation following her verbal dispute. We do not understand Zarnes's reliance on *Hewitt* and the language of § 710.16 because as a pre-trial detainee, she could "not be punished without due process regardless of state regulations." *Whitford v. Boglino,* 63 F.3d 527, 531 n. 4 (7th Cir.1995).

 Moreover, Rhodes proved that he assigned Zarnes to segregation for a non-punitive reason and thus § 710.16 is inapplicable—a different regulation governs non-disciplinary segregation of people housed in county jails. *See* 20 IL ADC § 710.70 (covering separation of prisoners including for administrative reasons). While this regulation could also conceivably grant Zarnes a protected right to stay out of segregation, *Hewitt*'s analysis may no longer be applicable to that determination. *See Sandin v. Conner,* — U.S. —, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (holding that courts should turn their focus from looking solely at the language of state regulations to also considering the type of interest at stake, but noting that its holding may be limited to cases involving convicted prisoners). In any event, regardless of *Sandin*'s effect, § 710.70 does not contain any mandatory language relevant to this issue. Thus, the district court properly held that Rhodes did not deprive Zarnes of her right to due process by placing her in segregation.

Finally, we note that we appointed counsel to represent Zarnes on appeal. While we have found that the district court did not abuse its discretion in originally refusing to do so, we are confident that the court will seriously consider any renewed motion for appointment of counsel on remand.

For the foregoing reasons, we AFFIRM in part, REVERSE in part and REMAND.