In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3158

Barbara J. Klein,

Plaintiff-Appellant,

v.

Sidney G. Perry, individually and as
Manager of the
Employee/Labor Relations Department of
the Human
Resources Administration, and Cheryl
Sullivan,
individually and as Secretary of the
Indiana Family
and Social Services Administration,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
No. 96 C 819--Richard L. Young, Judge.

Submitted March 8, 2000--Decided June 8, 2000

  Before Fairchild, Manion, and Rovner,
Circuit Judges.

  Rovner, Circuit Judge.  In 1996 Barbara
Klein filed this suit under 42 U.S.C.
sec. 1983, claiming that the defendants
suspended her from work for 30 days and
involuntarily transferred her from her
position with the Human Resources
Department of the Family and Social
Services Administration (FSSA) to a
position with the Division of Mental
Health in retaliation for her exercise of
her First Amendment right to freedom of
speech. The defendants countered by
arguing that Klein's claim was precluded
by a prior decision of the Indiana State
Employees' Appeals Commission (SEAC). The
district court agreed and granted the
defendants' motion for summary judgment.
Klein appeals.

As did the district court, we accord preclusive effect to the SEAC's factual findings. Federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under sec. 1983. See University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) ("[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.") (citation omitted); Crot v. Byrne, 957 F.2d 394, 396 (7th Cir. 1992). We believe the Indiana state courts would find that an issue of fact litigated and determined in an agency's decision is preclusive between the parties in a subsequent action, even though a different claim is involved. See Fruehauf Corp. v. Review Bd. of the Indiana Employment Security Div., 269 N.E. 2d 184, 189 (Ind. App. 1971); see also Flowers v. Carson, 917 F. Supp. 614, 619 (S.D. Ind. 1996); Kelly v. Municipal Ct. of Marion Co., 852 F. Supp. 724, 739 (S.D. Ind. 1994), aff'd 97 F.3d 902 (7th Cir. 1996).

Accordingly, the following statement of facts summarizes the facts found by the SEAC. Klein was employed as a personnel officer in the Human Resources Section of the FSSA. On or about September 25, 1995, Klein received a telephone call from a caseworker at the Marion County Division of Family and Children (DFC) who alleged some problems in the Child Protective Services (CPS) division and expressed fear of retaliation and dismissal if she disclosed those problems. Klein and fellow officer Fred Schute, who had been hired only recently, met with and interviewed the DFC caseworker, as well as a former colleague of the caseworker who had been dismissed from her employment with DFC. Klein and Schute met several times that week and reviewed many documents that had been copied by the caseworkers from the CPS division.

Klein updated her supervisor Sidney Perry, the Director of Employee/Labor

Relations for FSSA, on the investigation's progress on a daily, almost hourly, basis. By Friday, September 29, 1995, Perry had determined that some expertise in CPS matters was needed to review the records brought in by the two complaining caseworkers. Perry gave Klein the names of two investigators whom he asked to be assigned to the case and told her to call the Acting Director of Marion County DFC to set up a meeting that day with the two investigators to officially review the records, files, and documents. Upon examining staffing reports, Klein discovered that the two investigators whom Perry had designated to review the documents were themselves supervisors in the very same CPS division of Marion County DFC. Thus, Klein believed there was a conflict of interest in having those investigators review the documents that alleged wrongdoing by CPS supervisors. Klein testified that she was also concerned that Perry himself may have had a conflict of interest because he had previously advised Marion County DFC to dismiss one of the complaining caseworkers.

Klein had a doctor's appointment scheduled for the afternoon of September 29, 1995, for which she had already been given permission to leave work. Prior to leaving for that appointment, Klein tried to meet with Perry or his supervisor, James Ladd, but learned that both were in meetings. She then asked Schute to help her carry her notes regarding the investigation and the CPS caseworkers' documents to the Office of the General Counsel of FSSA, Rachel McGeever, for safekeeping. McGeever is the person designated to receive allegations of ethical problems. But McGeever was not in her office, nor was her Deputy General Counsel, Marianne Wilson. Klein then recognized another attorney walking in the hallway and asked him if he had a place where confidential documents could be safeguarded. The attorney, William Bogard, replied that he did and placed the documents in his office while he searched for the key to a locked file cabinet. Klein left for her doctor's appointment, and Schute returned to his office in Labor/ Employee Relations.

Upon returning to his office, Schute saw

Perry and, recalling that Klein had been looking for him earlier, told Perry the location of the documents. Schute accompanied Perry back to Bogard's office, where they retrieved the documents. When Klein telephoned Schute from her doctor's office later that afternoon and learned that the documents had been brought back to the Labor/Employee Relations office, she instructed Schute to return the documents to the Office of General Counsel. He did so, and this time found McGeever back in her office; he turned over the documents to her and requested that she safeguard them. Later that day, Perry learned that the documents had been delivered to the Office of General Counsel again, and for a second time he retrieved them and took them back to the Employee/Labor Relations office.

The next Monday, October 2, 1995, Klein received written notice of a possible disciplinary action charging her with gross misconduct, insubordinate behavior, disobeying an order, failure to follow instructions, and interfering with the completion of an investigation. The notice stated that a pre-deprivation hearing would be held at 2:30 that afternoon. At the hearing, Klein expressed her concerns about ethical violations in the investigation and explained her reasons for removing the documents. After hearing Klein's explanation, the hearing officer imposed a 30-day suspension without pay. Once Klein had served the suspension, she was transferred to the Division of Mental Health at Perry's instigation. Klein filed a grievance challenging her punishment, but this was denied. She appealed the denial to the SEAC.

Following an evidentiary hearing at which Klein was represented by counsel, the SEAC concluded that the disciplinary actions against her were warranted. The SEAC found that Klein did not explain to Schute her concerns about potential ethical dilemmas in allowing employees from the CPS division of the Marion County DFC to review the documents; concerns that someone might destroy or tamper with the documents; or concerns about Perry's involvement in the decision to dismiss one of the caseworkers who

instigated the present complaint.

The FSSA policy on ethics provides in part that "[a]ll staff have a responsibility to report perceived or real ethical violations to a supervisor or directly to the Ethics Commission." According to the SEAC, Klein did not report any real or perceived ethical violations to her co-workers, her supervisor, or the Ethics Commission. Rather, Klein removed documents in an ongoing investigation from the offices of the Employee/Labor Relations Division to prevent the employees from DFC from having access to them. Klein then instructed a co-worker to remove the documents a second time. These actions directly violated Perry's order to allow the two DFC supervisors to review the documents. Klein did not prove the urgency that induced her actions, nor that this was the only method available to alleviate her concerns. Thus, the SEAC concluded that the FSSA had just cause to suspend Klein for her actions.

Klein then filed suit directly in federal court under sec. 1983, alleging that the defendants retaliated against her for exercising her right to free speech, and requesting damages and injunctive relief. The defendants moved for summary judgment. In granting the defendants' motion, the court acknowledged its obligation to give preclusive effect to the SEAC's findings of fact under Elliott. But the court also observed that, because Klein did not raise the First Amendment defense before the SEAC, the agency's conclusion that Klein did not inform her co-workers of her ethical concerns did not preclude the district court from considering whether she had engaged in protected speech.

The court first concluded that Klein had not engaged in "speech" as contemplated by the First Amendment. According to the SEAC's findings, Klein had not communicated her concerns in either verbal or written form to any of her co-workers or the members of the Ethics Commission. The court explicitly rejected Klein's argument that the gesture of handing documents over to the Ethics Commission for safekeeping expressed

Klein's ethical concerns about the matter. Under Texas v. Johnson, 491 U.S. 397, 404 (1989), the court explained, there was no evidence that Klein intended her conduct to convey a message, nor were there facts suggesting that others who witnessed her conduct inferred such a message. The court then opined that, even assuming that Klein's removal of the files was protected expression, the state nonetheless could constitutionally regulate this expression because the restrictions were narrowly drawn and furthered a substantial governmental interest under Clark v. Community for Creative Non-Violence, 468 U.S. 288, 294 (1984). Finally the court determined that Klein's claim that she was retaliated against for "voicing ethical concerns to fellow employees" was estopped by the SEAC's finding that she did not inform her co-workers of her concerns.

We are concerned that the district court was not as thorough as it should have been in evaluating Klein's claim. The court's entire First Amendment analysis runs little more than one page, cites only two cases, and glosses over the communicative nature of Klein's actions. Although the court appropriately cited Texas v. Johnson, which outlines the test for determining when conduct rises to the level of "speech" under the First Amendment, the court did not analyze Klein's circumstances under that test. Instead the court held in conclusory fashion that Klein had not shown any evidence of communicative intent or effect. This unsupported conclusion is insufficient to permit this court to engage in meaningful review. The court must consider all aspects of her actions. Here, she did not merely transfer files from one office to another for safekeeping. She purposefully moved the files out of the Labor/Employee Relations office and into the office of McGeever, the person designated to receive allegations of ethical problems. The choice of that destination may express a concern with ethics just as an employee sending a file to the FBI or U.S. Attorney's Office may be seen as expressing a concern over criminal activity in her office. Additionally, although not argued by Klein's counsel before the district court, we note that Klein clearly did engage in protected

speech at the time she stated her case before the hearing officer. It was only after testifying before the hearing officer (and Perry) that Klein suffered the adverse employment actions she challenges here. Perhaps the nature of Klein's speech at the pre-deprivation hearing would be a fruitful avenue of inquiry to explore upon remand and at the least it may assist in interpreting the nature of her conduct.

Moreover, the case that the district court cited to analyze the state's punishment of employee speech is not on point. The case relied on by the district court, Clark, dealt with time, place and manner restrictions on the use of a public forum, not with protected speech by public employees. Surprisingly, the court here did not cite any of the cases specifically addressing protections for speech by public employees. See, e.g., Pickering v. Bd. of Education, 391 U.S. 563 (1968); Connick v. Meyers, 461 U.S. 138 (1983); Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492 (7th Cir. 1994). We do not have sufficient facts to determine the outcome of the Pickering test at this time. Accordingly, we remand this case with instructions to the district court to further consider whether Klein engaged in activity that the First Amendment jurisprudence considers speech. Should the court determine that she did engage in speech, then it must consider under the Pickering line of cases whether that speech was protected by the First Amendment. Finally, we observe that both Klein and the district court surely will benefit from having appointed counsel represent Klein on remand.

The judgment of the district court is VACATED and this case is REMANDED for further proceedings consistent with this opinion.

MANION, Circuit Judge, dissenting. While I agree with my colleagues that our review of this case could be enhanced by a further statement from the district court of its reasons for granting summary

judgment, this case can be decided as it stands on at least two grounds established on the present record.

First, because the First Amendment protects the exchange of ideas and not simple actions, Klein was required to create a genuine issue as to whether moving files between offices was expressive conduct. Smith v. Goguen, 415 U.S. 566, 586 (1974) (the First Amendment "applies to speech and not to conduct without substantial communicative intent and impact."). Courts have held that a variety of acts constitute expressive conduct--from burning draft cards and flags to wearing armbands--but there appears to be no precedent that says moving files from one room to another constitutes expressive conduct. Of course, the test does not depend solely on the type of action involved, but on the intent of the actor and the likelihood that others will perceive the message which inheres in the action. Texas v. Johnson, 491 U.S. 397, 404 (1989) ("In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it."). Klein concedes in her appellate brief that her intent in moving the documents was not expressive, but rather protective--she was afraid that the files would be destroyed. App. Br. at 10. And unlike wearing an armband or burning a flag, it seems unlikely that anyone who saw Klein and Schute carrying files--an act which regularly occurs in most office settings--would have perceived this conduct as conveying any message, much less a statement addressing matters of public concern. This brings us to Klein's next hurdle.

Even if we assume that moving files can be expressive conduct, Klein was then required to show that there was a genuine issue concerning whether: (1) the speech addressed a matter of public concern; and (2) any First Amendment interests in the matter were not outweighed by the state's interests in promoting the efficiency of its public services.  Pickering v. Board

of Educ., 391 U.S. 563 (1968); Bonds v. Milwaukee County, 207 F.3d 969, 979 (7th Cir. 2000). Assuming further that Klein's conduct addressed a matter of public concern rather than her own interests, she didn't make the showing as required at the summary judgment stage that this interest is greater than the Social Services Administration's need to have the files available for examination by investigators and its need for efficiency, discipline, and harmony in the work environment. See Kokkinis v. Ivkovich, 185 F.3d 840, 845 (7th Cir. 1999).

Although Klein is pro se on appeal, she was represented by counsel before the district court. Thus she had adequate opportunity to make her case by presenting facts showing that what appeared to be rather routine conduct was instead protected speech involving matters of public concern. No doubt had she presented the same bundle of files to the offices of the FBI or the U.S. Attorney, a full explanation of reasons would be necessary before acceptance by either agency. Because Klein failed to create genuine issues as to whether her actions were expressive conduct or whether her interests outweighed those of the state, and because either defect is fatal to her case, summary judgment was proper.

That being said, although the case will be remanded for further proceedings, it is not necessary that the district court appoint counsel on remand. Civil litigants have neither a constitutional nor statutory right to appointed counsel. Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir. 1995). While 28 U.S.C. sec. 1915(e)(1) permits district courts to assign counsel to the indigent, Klein does not claim indigence, making section 1915(e)(1) inapplicable. As to other bases for appointing counsel, those are left to the sound discretion of the trial court, and we should not invade this domain lightly. Id. Furthermore, before the district court can exercise its discretion to appoint counsel, it should consider whether: (1) the litigant seeks an appointment of counsel; (2) the litigant made a reasonable attempt to again secure private counsel; (3) other

measures short of appointing counsel are appropriate; (4) the case is so difficult that it merits such an appointment; and (5) an appointment of counsel would provide a substantial benefit to the court or the parties. Luttrell v. Nickel, 129 F.3d 933, 936 (7th Cir. 1997); Donald v. Cook County Sheriff's Dept., 95 F.3d 548, 554 n.1 (7th Cir. 1996); Zarnes, 64 F.3d at 288. The record does not indicate that any of these factors compels the appointment of counsel in this case. Rather, from Klein's pro se brief we see that she is cognizant of the applicable cases and the relevant facts, and her case fails simply because she has no claim, and not because of some shortcoming in the litigation process. As noted, before the district court Klein was represented by two attorneys. And the mere fact that Klein's case could not withstand a motion for summary judgment should not call into question their competence. But even if there were a legitimate reason for appointing counsel, I would leave that decision entirely to the sound discretion of the district court.