**Eugene L. CHERRY, Plaintiff–Appellant,**

**v.**

**Matthew FRANK, et al., Defendants–Appellees.**

**No. 04–1214.**

United States Court of Appeals, Seventh Circuit.

Submitted March 8, 2005.*

Decided March 8, 2005.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Eugene L. Cherry, pro se, Boscobel, WI.

David E. Hoel, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants—Appellees.

Before Hon. DANIEL A. MANION, Hon. MICHAEL S. KANNE, and Hon. TERENCE T. EVANS, Circuit Judges.

ORDER

Wisconsin inmate Eugene Cherry appeals the district court's grant of summary judgment on his claim under 42 U.S.C. § 1983 that prison officers subjected him to a cruel and excessive strip search. He also challenges the district court's denial of his request for appointment of trial counsel. We affirm.

We first note that Cherry fails to adequately develop on appeal all but two arguments—that a strip search violated his Eighth Amendment rights, and that the district court wrongly denied his request to appoint counsel to help him present a claim of food-tampering on which he was allowed to proceed to trial—and has thereby waived the rest of his claims. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001); *United States ex. rel. Verdone v. Cir. Ct. for Taylor County,* 73 F.3d 669, 673 (7th Cir.1995). We recount only those facts relevant to those two claims.

Cherry's first claim arises from a strip search that occurred on February 8, 2003. The facts on summary judgment establish that between 5:30 and 6:00 p.m., Officer T. Brown ordered Cherry to come out of his cell so that it could be searched for contraband. Cherry refused to do so until the supervising officer, Joan Gerl, arrived. Noting in an affidavit that Cherry previously "had been in possession of staples" in his cell and suspicious of Cherry's "resistance to having his cell searched," Officer Gerl recounted that she believed Cherry to be possibly "hiding contraband" and

ordered him to be "strip-searched for security reasons."

Officer Brown brought Cherry to a strip cell away from other inmates for a visual strip search. Cherry at first complied with orders that allowed Brown to visually inspect his body. But Cherry refused "to take his braids out." In her affidavit, Officer Gert attested that it "was necessary for security purposes for [Cherry] to undo his braids because small objects, such as staples or other small sharp objects like needles could be concealed in the braids." Cherry was "becoming agitated," so Gerl ordered the officers to leave Cherry in the strip cell to give him "time to calm down." When Gerl returned to the strip cell at about 8:30 p.m., Cherry continued to refuse to take down his braids. Instead, Cherry responded with sexualized language and gestures.

Because Cherry would not cooperate fully with the visual strip search by undoing his braids, Officer Gary Boughton authorized the use of force to complete the search. Several officers removed Cherry from the cell and placed him in wrist and ankle restraints, so that Officer Corey Haney could safely perform a physical search of Cherry. First searching Cherry's hair, Haney then searched the rest of Cherry's body. According to Cherry, Haney at one point "grabb[ed]" and "tugg[ed]" on his genitals and "opened [his] buttcheeks to perform a body cavity search." Haney attests that he "manipulate[d] [Cherry's] genitals" as was "necessary in order to expose areas hidden from sight." According to Cherry, Gerl, who watched the search, "turned a blind eye" to his calls for help. The entire search lasted about five minutes. Upon Cherry's request following the search, a nurse examined Cherry and found no injuries.

The district court granted summary judgment in favor of defendants on Cherry's claim that the search was unconstitutional. The district court rejected Cherry's excessive force claim, determining that there was no evidence that Officer Haney searched Cherry out of a desire to humiliate him. Physical force was justified, the court explained, because Cherry initially refused to comply with the search by not taking down his braids, and the officers were concerned that Cherry transferred contraband from his "unsearched braided hair to other parts of his body" during the two hours he was left alone in the strip cell. The court, however, allowed Cherry to proceed to trial on his claim that Correctional Officers Thomas Belz and Henry Bray tampered with his food in violation of the Eighth Amendment and in retaliation for complaints Cherry had made about the officers.

As trial approached, Cherry requested (for the eighth time during these proceedings) that counsel be appointed. He asserted no new reasons for this request other than to argue that surviving summary judgment entitled him to counsel so that he could have his "fair day in court." The district court again denied the request, having determined Cherry "is capable of presenting his case and that appointment of counsel will not make a difference in the outcome of the case."

Cherry thus represented himself at trial on his Eighth Amendment and retaliation claims. He testified himself, presented one inmate witness, and conducted cross-examination of Officers Bray and Belz. A jury returned a verdict in favor of the defendants.

■ On appeal Cherry first challenges the grant of summary judgment on his claim that the strip search was unconstitutional, arguing that the defendants acted "maliciously and sadistically to cause harm" through a "needless use of force."

Although conceding that he refused to "take his braids down" during the visual search, Cherry contends that he "cooperated with the strip search procedures," and that the defendants' subsequent physical search served no purpose other than to humiliate him.

For an Eighth Amendment claim that a search was excessive, Cherry must show that Officer Haney conducted the physical search of Cherry's person "in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir.2003); *Bruscino v. Carlson,* 854 F.2d 162, 166 (7th Cir.1988) (applying Eighth Amendment standard for visual strip searches to physical searches). Such searches must be "maliciously motivated, unrelated to institutional security and hence totally without penological justification." *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir.2004) (internal quotations and citations omitted); *see Peckham v. Wis. Dep't of Corrs.,* 141 F.3d 694, 697 (7th Cir.1998).

Nothing in the record suggests that Officer Haney conducted the physical search of Cherry's body without penological justification. Rather, the evidence shows just the opposite: the physical search was based on legitimate, identifiable concerns about security. By admittedly refusing to take down his braids, Cherry did not comply with the visual search and increased suspicions that he had hidden contraband in his braids. Compounding those suspicions, Cherry had the opportunity during his several hours in the strip cell to transfer contraband from his braids to other body parts. And when the officers returned to continue the search, Cherry acted out against them with sexually inappropriate language and gestures. *See Bruscino,* 854 F.2d at 166 (rectal search reasonable in light of "incorrigible, undeterrable conduct"). Moreover, even if Officer Haney had "grabbed" and "tugged on" Cherry's genitals, as Cherry attests, Cherry never refutes Haney's stated purpose that he "manipulat[ed]" Cherry's genitals in order to expose areas where he believed Cherry may have hidden contraband.

Cherry disputes any security justification for the search by asserting that he could not have transferred contraband from his braids because he was "in the stripcage for hours under the watchful eye of a staff member" and he was "already 'naked.'" But he points to no evidence confirming that a staff member watched him during the entire time he was in the strip cell. And that he was naked does not address the defendants' concern that he may have been hiding contraband in his braids. Without evidence to dispute the defendants' legitimate, identifiable purpose for the search, Cherry cannot establish that the search was unconstitutional. *See Calhoun,* 319 F.3d at 939.

█ Finally, Cherry argues that, given his limited education and legal knowledge, the district court abused its discretion by not appointing him trial counsel. But there is no constitutional right to counsel in civil cases, even those that proceed to trial. In considering a request for counsel, a district court assesses whether, given the difficulty of the case, the plaintiff appeared competent at the time to try it himself and whether counsel could make a difference to the outcome. *Forbes v. Edgar,* 112 F.3d 262, 264 (7th Cir.1997); *Farmer v. Haas,* 990 F.2d 319, 322–23 (7th Cir.1993). The district court here determined that the case did not involve complex, technical issues; that counsel could not affect the outcome because the case had little merit; and that Cherry's pleadings and numerous past lawsuits showed him to be sufficiently experienced to try the case. *See Zarnes v. Rhodes,* 64 F.3d 285, 288–89 & n. 2 (7th

Cir.1995) (unlike claims involving complex medical evidence, plaintiff's failure-to-protect claim was not complex enough to require appointment of counsel). Based on the district court's thorough consideration of these factors, it properly exercised its discretion in denying his request.

AFFIRMED.