NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 12, 2009
Decided January 13, 2010[*]

**Before**

JOHN L. COFFEY, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-1943

| | |
|---|---|
| ABDUL M. LOVE, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> DAVID KIRK, et al. <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> 06 C 1537 <br><br> Joan Humphrey Lefkow, <br> *Judge*. |

### O R D E R

Abdul Love filed this suit under 42 U.S.C. § 1983, claiming that while he was confined in the pretrial detention unit at the Lake County, Illinois Correctional Center, employees of the County Sheriff's Department violated his Fourteenth Amendment right to due process by transferring him into the segregation unit from the general jail population

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

without a hearing.  The district court ruled in favor of the sheriff's department motion for summary judgment.  Love appeals, and we affirm.

In October 2005 Love was arrested and placed in the pretrial detention unit pending a hearing on a cocaine charge.  Shortly thereafter the sheriff's criminal investigations unit informed Patrick Firman, chief of corrections of the Lake County Sheriff's Department, that Love—while confined in the general inmate population—attempted to solicit the murder of the police officer who arrested him in his pending criminal case.  Subsequently, Love was indicted and charged with the solicitation of murder in the cocaine case.

As a result of the attempted murder solicitation, Love was transferred in January 2006 to the administrative segregation unit ("ASU") where he was placed in "lock-down" status for 23 hours per day, keeping him from interacting with the other inmates.  David Kirk, Sergeant of the Lake County Sheriff's Department, explained in a letter that, based on Love's criminal conduct, he was being transferred to ASU for the safety of the staff and other inmates as well as his own safety.  The letter stated,

> Mr. Love, you have been assigned to Status 3 Segregation.  This is an administrative segregation and the current charges that you face, nessitates [sic] the need for this segregation.
>
> Your segregation status is in the best interest of your safety and the safety and security of the Lake County Sheriff[']s Adult Correctional Division.

Love was ordered segregated for an indefinite period of time, but the jail's classification committee routinely reviewed his placement to determine whether he could be returned to the general population.  Shortly after being transferred to ASU, Love gave one of the jail's officers a letter containing a threat to two Lake County judges.  Although Love denies writing the letter or intending to personally threaten the judges, the letter became part of Love's record for the classification committee's consideration during his confinement.

Love filed several grievances and requested a hearing as well as challenged the conditions of his segregation.  Jail officials denied Love's request for a hearing, stating that it is not a part of the ASU's procedure.  In response to one of Love's grievances, Firman also explained that while in ASU, Love's ability to mix with other inmates would be limited: "[d]ue to your demonstrated behavior, the serious nature of your criminal actions while in custody, and my concerns for the safety and security of this facility."  Both Firman and Kirk later testified at the deposition hearing that Love posed a significant security risk to the Lake County Sheriff's Adult Correctional Division and that ASU was the only place where they could closely monitor his activity.  Kirk added that had Love's "alleged charges" been

reduced or dropped, he probably would have been released from ASU. But jail officials received no information during 2006 which would lead them to cast any doubt about their decision that Love posed a security risk, necessitating Love's continued segregation until January 2007. Thereafter, a change in the jail's command structure took place, and he was transferred back to the general inmate population.

Love filed this suit in March 2006, alleging that the defendants (Kirk, et. al.) violated his Fourteenth Amendment right to due process when he was placed in segregation without a hearing. Love argued that his segregation was punishment for his alleged solicitation attempt, and "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Love claimed that the defendants were somehow constitutionally required to provide him a disciplinary hearing before transferring him into the segregation unit.

The trial judge granted summary judgment for the defendants (jail officials), ruling that the defendants were entitled to take the steps necessary "to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees" or otherwise ensure the "effective management of the detention facility." *See id.* at 540. Furthermore, Love failed to establish that his segregation required a due process hearing under *Bell*. In *Bell*, the Supreme Court held that, unlike one convicted and sentenced, a pretrial detainee—not yet found guilty of any crime—may not be punished for misconduct while in custody without due process. *Id.* at 535-37; *see Higgs v. Carver*, 286 F.3d 437, 438-39 (7th Cir. 2002); *Zarnes v. Rhodes*, 64 F.3d 285, 291 (7th Cir. 1995). To establish a right to due process, a pretrial detainee must demonstrate either 1) an "expressed intent to punish on the part of detention facility officials" or 2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. *Bell*, 441 U.S. at 538-39; *see Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999). After reviewing the undisputed facts in this case, the trial court concluded that Love failed to demonstrate an express intent on the part of the defendants to punish him nor did he establish the lack of a reasonable relationship between his segregation and a legitimate, non-punitive purpose.

On appeal Love argues that the district court erred in granting summary judgment to the defendants because a genuine issue of material fact existed dealing with the question of whether his segregation was punitive and if so, necessitated a disciplinary hearing. Love contends that the defendants' express intent to punish him is reflected in statements by Firman and Kirk in which they justified his segregation as being based on his solicitation "charges" and "criminal actions" while in custody.

After reviewing the record, we are convinced that Love failed to establish that the defendants expressly intended to punish him. When read in context, the statements of

Firman and Kirk justify segregating Love in order to promote the safety of those in the facility as well as the general public. *See Zarnes*, 64 F.3d at 291 (defendant's decision to segregate detainee for "unacceptable conduct" lacked punitive intent because context of statement showed that the conduct posed a security threat); *cf. Higgs*, 286 F.3d at 438-39 (question of punitive intent was ambiguous where letter justifying segregation for detainee's threatening behavior did not expressly refer to security concerns). Although Love now challenges the veracity of the defendants' stated rationale for placing him in segregation, he failed to point out anything in the record that demonstrates that the defendants expressly intended to punish him. *See Bell*, 441 U.S. at 538; *Zarnes*, 64 F.3d at 291.

Absent proof of any jail officials' express intent to punish him, Love's only alternative under *Bell,* then, depends on his ability to establish that his segregation was either arbitrary or not reasonably related to a legitimate, non-punitive, administrative purpose. *See Bell*, 441 U.S. at 538-39; *Hart v. Sheahan*, 396 F.3d 887, 892 (7th Cir. 2005); *Rapier*, 172 F.3d at 1005. The trial judge considered Love's admission that Firman believed the ASU was the only appropriate unit in the Lake County Correctional Center where he could monitor Love's activities to preclude any future harm and concluded that Love failed to ascertain a purpose for his segregation beyond its legitimate function of preventing harm to the officer he threatened, other inmates, and other institutional personnel. On appeal, Love has again failed to properly challenge this conclusion, and he cannot adequately contest the legitimacy of segregating an inmate attempting to solicit the murder of a police officer.

On the other hand, Love does raise two additional arguments for the first time on appeal. He contends that the duration of the segregation imposed on him is an "atypical and significant hardship" relative to the ordinary incidents of prison life, a standard applicable only to convicted prisoners. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Rapier*, 172 F.3d at 1004-05. He also refers to the specific restrictions of his segregation (i.e., restricted access to the commissary, television, outdoor recreation, and educational services) as exceeding the purpose of the segregation to promote the safety of the facility as well as the general public. *See Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 169 (1963). Neither of these arguments were presented to the trial court when Love was represented by counsel. These arguments are thus forfeited, and we see no need to consider them. *See Witte v. Wisconsin Dept. of Corrections*, 434 F.3d 1031, 1038 (7th Cir. 2006).

AFFIRM the judgment of the district court.